1

2

3

4

5

6

7

8                             UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DONALD E. TINSLEY,                              No.  2:16-cv-1647 TLN AC P

12                   Plaintiff,

13           v.                                      ORDER and

14   ROBERT FOX, Warden, et al.,                     FINDINGS AND RECOMMENDATIONS

15                   Defendants.

16

17       I.      INTRODUCTION

18           Plaintiff is a state prisoner at the California Medical Facility (CMF), under the authority of

19   the California Department of Corrections and Rehabilitation (CDCR).  Plaintiff proceeds pro se

20   with a civil rights complaint filed pursuant to 42 U.S.C. § 1983, and request to proceed in forma

21   pauperis pursuant to 28 U.S.C. § 1915.  This action is referred to the undersigned United States

22   Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Rule 302(c).

23           For the reasons set forth below, the court grants petitioner's request to proceed in forma

24   pauperis; screens plaintiff's complaint pursuant to 28 U.S.C. § 1915A; notifies plaintiff of the

25   deficiencies in his complaint; and dismisses the complaint with leave to file a First Amended

26   Complaint.  In addition, the undersigned recommends to the district judge that plaintiff's requests

27   for immediate court intervention be denied.

28   ////

                                                    1

II.   IN FORMA PAUPERIS APPLICATION

Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a).  Accordingly, plaintiff's request to proceed in forma pauperis, ECF No. 3, will be granted.

Plaintiff is still required to pay the statutory filing fee of $350.00 for this action.  See 28 U.S.C. §§ 1914(a), 1915(b)(1).  By this order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1).  By separate order, the court will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the Court.  Thereafter, plaintiff will be obligated for monthly payments of twenty percent of the preceding month's income credited to plaintiff's prison trust account.  These payments will be forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full.  28 U.S.C. § 1915(b)(2).

III.   LEGAL STANDARDS FOR SCREENING PLAINTIFF'S COMPLAINT

A.   Screening of Prisoner Complaint Pursuant to 28 U.S.C. § 1915A

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984).  The court may dismiss a claim as frivolous when it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke, 490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully pled, has an arguable legal and factual basis.

A district court must construe a pro se pleading liberally to determine if it states a potentially cognizable claim.  The court must explain to the plaintiff any deficiencies in his

1    complaint and accord plaintiff an opportunity to cure them.  See Lopez v. Smith, 203 F.3d 1122,

2    1130-31 (9th Cir. 2000).  While detailed factual allegations are not required, "[t]hreadbare recitals

3    of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

4    Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corporation  v. Twombly, 550

5    U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to

6    'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Twombly,

7    550 U.S. at 570).  "While legal conclusions can provide the framework of a complaint, they must

8    be supported by factual allegations."  Id. at 679.  Rule 8 of the Federal Rules of Civil Procedure

9    "requires only a short and plain statement of the claim showing that the pleader is entitled to

10   relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it

11   rests."  Twombly, 550 U.S. at 555 (citation and internal quotation and punctuation marks

12   omitted).

13        A pro se litigant is entitled to notice of the deficiencies in the complaint and an

14   opportunity to amend, unless the complaint's deficiencies cannot be cured by amendment.  See

15   Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

16                    B.    Legal Standards for Administrative Exhaustion

17        "The Prison Litigation Reform Act of 1995 (PLRA) mandates that an inmate exhaust

18   'such administrative remedies as are available' before bringing suit to challenge prison

19   conditions."  Ross v. Blake, 136 S. Ct. 1850, 1854-55 (June 6, 2016) (quoting 42 U.S.C. §

20   1997e(a)).  "There is no question that exhaustion is mandatory under the PLRA[.]"  Jones v.

21   Bock, 549 U.S. 199, 211 (2007) (citation omitted) (cited with approval in Ross, 136 S. Ct. at

22   1856).  The exhaustion requirement is based on the important policy concern that prison officials

23   should have "an opportunity to resolve disputes concerning the exercise of their responsibilities

24   before being haled into court."  Jones, 549 U.S. at 204.  The "exhaustion requirement does not

25   allow a prisoner to file a complaint addressing non-exhausted claims."  Rhodes v. Robinson, 621

26   F.3d 1002, 1004 (9th Cir. 2010); McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002) (per

27   curiam) ("a prisoner does not comply with [the exhaustion] requirement by exhausting available

28   remedies during the course of the litigation").

                                                        3

1    Regardless of the relief sought, a prisoner must pursue an appeal through all levels of a

2    prison's grievance process as long as some remedy remains available.  "The obligation to exhaust

3    'available' remedies persists as long as *some* remedy remains 'available.'  Once that is no longer

4    the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the

5    grievance."  Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (original emphasis) (citing Booth

6    v. Churner, 532 U.S. 731, 739 (2001)).  "The only limit to § 1997e(a)'s mandate is the one baked

7    into its text:  An inmate need exhaust only such administrative remedies as are 'available.'"

8    Ross, 136 S. Ct. at 1862.

9    Thus, "an inmate is required to exhaust those, but only those, grievance procedures that

10   are 'capable of use' to obtain 'some relief for the action complained of.'"  Ross, 136 S. Ct. at

11   1859 (quoting Booth, 532 U.S. at 738).  The Supreme Court ruled that there are only "three kinds

12   of circumstances in which an administrative remedy, although officially on the books, is not

13   capable of use to obtain relief."  Ross, at 1859.  These circumstances are as follows:  (1) the

14   "administrative procedure . . . operates as a simple dead end – with officers unable or consistently

15   unwilling to provide any relief to aggrieved inmates;" (2) the "administrative scheme . . . [is] so

16   opaque that it becomes, practically speaking, incapable of use . . . so that no ordinary prisoner can

17   make sense of what it demands;" and (3) "prison administrators thwart inmates from taking

18   advantage of a grievance process through machination, misrepresentation, or intimidation."  Id. at

19   1859-60 (citations omitted).  Other than these circumstances demonstrating the unavailability of

20   an administrative remedy, the mandatory language of 42 U.S.C. § 1997e(a) "foreclose[es] judicial

21   discretion," which "means a court may not excuse a failure to exhaust, even to take [special]

22   circumstances into account."  Ross, 136 S. Ct. at 1856-57.

23   Within the Ninth Circuit, dismissal of a prisoner civil rights action for failure to exhaust

24   administrative remedies must generally be decided pursuant to a motion for summary judgment

25   under Rule 56, Federal Rules of Civil Procedure.  Albino v. Baca, 747 F.3d 1162 (9th Cir. 2014)

26   (en banc).  The only exception is "[i]n the rare event that a failure to exhaust is clear on the face

27   of the complaint."  Id. at 1166 (authorizing defendant to move for dismissal pursuant to Fed. R.

28   Civ. P. 12(b)(6)); see also Jones, 549 at 215 (exhaustion is not a pleading requirement but an

affirmative defense that, if apparent on the face of the complaint, may support dismissal); Wyatt v. Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003) ("A prisoner's concession to nonexhaustion is a valid ground for dismissal, so long as no exception to exhaustion applies."), overruled on other grounds by Albino, supra, 747 F.3d at 1166; Vaden v. Summerhill, 449 F.3d 1047, 1051 (9th Cir. 2006) ("Because Vaden did not exhaust his administrative remedies prior to sending his complaint to the district court, the district court must dismiss his suit without prejudice.") (citing Wyatt, 315 F.3d at 1120).

Therefore, when it is clear from the face of the complaint and any attached exhibits that a plaintiff did not exhaust his available administrative remedies before commencing an action, the action may be dismissed on screening for failure to state a claim.  See 28 U.S.C. § 1915A(b)(1) (upon screening, "the court shall . . . dismiss the complaint, or any portion of the complaint, if the complaint  (1) . . . fails to state a claim upon which relief may be granted"); 42 U.S.C. § 1997e (c)(2) ("In the event that a claim [] on its face . . . fails to state a claim upon which relief can be granted, . . . the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies.").[1]

---

[1]  Accord, Sorce v. Garikpaetiti, 2014 WL 2506213, at *3, 2014 U.S. Dist. LEXIS 76431, at *8 (S.D. Cal. May 30, 2014) ("based on Plaintiff's concession of nonexhaustion, which is clear and unequivocal on the face of his Complaint, the Court finds Plaintiff's case must be dismissed [on screening] for failing to state a claim upon which any relief may be granted") (citations omitted); Young v. Unnamed, Secretary of CDCR, 2014 WL 5176386, at*4, 2014 U.S. Dist. LEXIS 146472, at *8 (S.D. Cal. Oct. 14, 2014) (on screening and "based on Plaintiff's concession of nonexhaustion, which is clear and unequivocal on the face of his Complaint, the Court finds that even if Plaintiff had sufficiently alleged an Eighth Amendment claim against the Secretary, his Complaint would still be subject to dismissal . . . for failing to state a claim upon which relief can be granted") (citations omitted); Lucas v. Director of Dept. of Corrections, 2015 WL 1014037, at*4,  2015 U.S. Dist. LEXIS 27957, at *9 (E.D. Cal. Mar. 5, 2015) (on screening plaintiff's FAC, in which plaintiff conceded that he had not exhausted his administrative remedies before he commenced the action, the court found that plaintiff's "attempt to initiate federal litigation prior to his full administrative exhaustion requires dismissal of this civil action without prejudice to plaintiff's bringing of his now exhausted claims in a new civil action") (citations omitted); Eha v. California Institute for Men, 2015 WL 8664155, at *3, 2015 U.S. Dist. LEXIS 27957, at *8 (C.D. Cal. Dec. 10, 2015) ("Plaintiff's 'concession to nonexhaustion' in his Complaint and in his First Amended Complaint warrants dismissal at the pleading stage.") (citations omitted); Morehead v. Kern Valley State Prison, 2016 WL 3136034, at *2, 2016 U.S. Dist. LEXIS 72234, at *5 (E.D. Cal. June 2, 2016) (dismissing FAC on screening on the ground that,"[w]hile the Court typically (continued…)

1     IV.     SCREENING PLAINTIFF'S CIVIL RIGHTS COMPLAINT

2            A.     Plaintiff's Allegations

3            Plaintiff's complaint, filed July 13, 2016,[2] challenges his urinalysis drug testing and

4     attempted testing at CMF, and plaintiff's resulting RVRs, initially for positive test results, then

5     for refusing to cooperate with testing.  Plaintiff contends that the tests are unreliable, yielding

6     false positive readings including "static readings of 300," and fail to include more refined follow-

7     up testing, such as the "gas chromatography-mass spectrometry" (GC/MS) test.  Plaintiff

8     contends that, after years of sobriety and negative test results while incarcerated at California

9     Men's Colony (CMC), and the dismissal of his initial urinalysis drug test and related RVR at

10    CMF due to unreliability, plaintiff should not be penalized for refusing to undergo additional

11    testing.  Plaintiff seeks, inter alia, the dismissal of subsequent RVRs and an order of this court

12    preventing plaintiff's scheduled transfer to another prison.  The named defendants are CMF

13    Warden R. Fox, CMF Associate Warden C. Tileston, and CMF Hearing Officer Lt. V. Martinez.

14           More specifically, plaintiff alleges the following.[3]  Plaintiff concedes that he used

15    morphine from March 2009 to April 2013, while incarcerated at CMC.  ECF No. 1 at 8.[4]

16    Following a year of sobriety, including 48 negative drug tests, plaintiff was transferred to CMF in

17    May 2014.  From May 2014 to January 2016, plaintiff completed eight random urinalysis drug

18    tests, all negative.  Plaintiff worked in the CMF kitchen, with good reviews, and actively

19    participated in positive programming.

20    ////

21    _____

22    grants leave to amend in a pro se cases (sic), Plaintiff's clearly conceded failure to exhaust cannot
      be cured by the allegation of additional facts.").

23    [2]  Unless otherwise noted, plaintiff's filing dates reflect the prison mailbox rule, which provides
      that a document is deemed served or filed on the date a prisoner signs the document (or signs the

24    proof of service, if later) and gives it to prison officials for mailing.  See Houston v. Lack, 487
      U.S. 266 (1988) (establishing prison mailbox rule); Campbell v. Henry, 614 F.3d 1056, 1059 (9th

25    Cir. 2010) (applying the mailbox rule to both state and federal filings by prisoners).
      [3]  The court draws from plaintiff's complaint, as well as his many additional filings, to provide

26    the fullest description of plaintiff's allegations and claims and their current status.
      [4]  Page references to filed documents reflect the court's pagination upon docketing in the court's

27    Case Management/Electronic Case Files (CM/ECF) system, not the internal pagination of the
      cited documents.

28

6

On February 8, 2016, plaintiff was again randomly tested at CMF.  On February 25, 2016, based on qualified positive test results from the February 8 sample, plaintiff received RVR Log No. 0216032 (hereafter "RVR #1"), charging him with a violation of Cal. Code Regs. tit. 15, § 3016(a), "Positive Urinalysis (Morphine)."  See ECF No. 1 at 24-5, 32-7.  The lab report for the test leading to RVR # 1 reflects a "positive" result for morphine (with a reading of "300," the designated "cutoff" level), and the notation "[p]ossible diluted urine sample."  Id. at 30.

On March 11, 2016, plaintiff attended his disciplinary hearing on RVR #1 and argued that the test result had to be a false positive.  The hearing officer, defendant Lt. Martinez, found plaintiff guilty of the charged offense, and found that it constituted plaintiff's third offense based on two of his prior positive tests at CMC, thus triggering plaintiff's placement on CDCR's Mandatory Random Drug Testing (MRDT) program.  Plaintiff was assessed a 90-day credit loss, a 180-day loss of visits, placed on Privilege C-Status for 60 days and, pursuant to the MRDT program, ordered to undergo weekly testing for a year ("a minimum of four weekly drug tests per month for one year").  See ECF No. 1 at 24-31.  The MRDT program is designated "part of an authorized disposition of a discipline hearing."  See CDCR Dept. Operations Manual (DOM) §§ 52010.12, 52010.14-52010.16.  Plaintiff states that he was devastated by this turn of events, and found it difficult to explain to his family, work crew and AA group.

On March 13, 2016, plaintiff appealed the finding of guilt on RVR #1 (Appeal Log No. CMF-M-16-00659), arguing that the dilution reading indicated his urine sample had been tampered.  ECF No. 1 at 9-10; 32-7.  First Level Review was bypassed.  The Second Level Review decision, issued April 27, 2016, on behalf of defendant Warden Fox, dismissed RVR #1 "in the interest of justice."  Id. at 36.  The Warden reasoned that "there appears to be support for the appellant's request" because "the toxicology report indicated that the sample was possibly diluted with a value between 5 mg/dl to 20 mg/dl."  Id.

Thereafter, on May 4, 2016, at the direction of defendant Warden Fox, defendant Associate Warden Tileston formally dismissed RVR #1.  Id. at 38.  The dismissal removed plaintiff from the MRDT program, explaining, id.:

////

7

1
2
3
4
5
6

> Effective Wednesday, May 4, 2016, Inmate Tinsley [] will no longer be subject to Mandatory Random Drug Testing (MRDT) program as a result of his guilty finding for [RVR Log No. 0216032]. Pursuant to his submitted appeal (CMF-M-16-000659), the RVR that resulted in the MRDT has been dismissed in the interest of justice; therefore, his requirement to be placed on the MRDT is rescinded as it related to this RVR. However, he is still subject to any random drug testing as required pursuant to departmental policy and/or any other MRDT, as a result of other RVRs, which resulted in him being placed on the MRDT.

7      Meanwhile, before the May 4, 2016 removal of plaintiff from the MRDT program,

8   plaintiff was tested on March 25, 2016, and March 30, 2016, and April 22, 2016. Id. at 7. All

9   three tests were positive. Plaintiff received RVRs on all three tests, dated, respectively, April 4,

10  2016 (RVR Log No. 013484) ("RVR #2"); April 11, 2016 (RVR Log No. 014149) (RVR #3), and

11  May 2, 2016 (RVR Log No. 022397) (RVR # 4). Id. at 7; see also id. at 39-55.

12     Plaintiff was found guilty of RVR #2 by defendant Lt. Tileston on May 12, 2016, who

13  apparently again placed plaintiff on the MRDT list. Id. at 39-43. The underlying lab report

14  reflected a positive reading for morphine, at the "300" cutoff level, without any qualifying

15  statements. Id. at 43. Plaintiff appealed the guilty finding on RVR # 2 (Appeal Log No. CMF-

16  M-16-01262). See id. at 77-82. First Level Review was bypassed. The Second Level Review

17  decision, issued June 21, 2016, on behalf of defendant Warden Fox, upheld the guilty finding.[5]

18  Id. Plaintiff appears to indicate that this appeal was submitted for Third Level Review on July 13,

19  2016 (the date plaintiff filed his complaint in this action).[6] See id. at 7.

20     RVRs #3 and #4 were dismissed based on "not guilty" findings at the disciplinary

21  hearings. ECF No. 1 at 7, 45, 52. RVR #3 was dismissed at a hearing held May 14, 2016, by

22  Hearing Officer Lt. Cherinka, "based on a preponderance of evidence," particularly the dismissal

23  of RVR #1 based on similar test results. Id. at 45-6; see also id. at 44-8. Similarly, RVR #4 was

24

25  [5] Plaintiff maintains that the test results supporting RVR #2 were no more valid than the results supporting RVRs # 1, 3 and 4, all of which were dismissed – plaintiff asserts that the results
26  supporting RVR #2 failed to note (unlike the results for RVRs # 1, 3 & 4) that the creatinine level indicated dilution.
27  [6] However, an August 12, 2016 letter indicates that on that date this appeal was submitted for an "amended Second Level Response." ECF No. 7 at 27.

28

1  dismissed at a hearing held May 30, 2016, by Hearing Officer Lt. Hume, "based on a

2  preponderance of evidence," due to lab results similar to those found in the test underlying RVR

3  #1.  Id. at 51; see also id. at 49-53, 82.

4          When plaintiff filed his complaint on July 13, 2016, he had declined to cooperate with

5  further urinalysis drug tests on 9 separate occasions, each resulting in a new RVR, commencing

6  with RVR #5.  See ECF No. 1 at 7.  As of July 24, 2016, plaintiff had received a total of 16 RVRs

7  for refusing to cooperate with testing.[7]  See ECF No. 4.  As of October 12, 2016, plaintiff had at

8  least 24 RVRs based on his refusal to provide urine samples.  See ECF No. 11.

9          Significantly, on August 12, 2016, plaintiff's RVRs ## 2 through 9, issued between April

10  4, 2016 and June 27, 2016 (RVR Log Nos. 013484, 014149, 022397, 025394, 028052, 030322,

11  113825, and 152632) were all dismissed on Second Level Review in Appeal Log No. CMF-M-

12  16-01357.  See ECF No. 8 at 13-5.  The decision, issued on behalf of defendant Warden Fox, was

13  based on the finding that plaintiff had improperly remained on the MRDT list after the dismissal

14  of his RVR #1.  Id.

15          The August 12, 2016 appeal decision also noted that, on June 6, 2016, plaintiff was

16  properly placed on the Mandatory Random Urinalysis Program (MRUP) list, "an inclusive

17  process of selection of inmates where a small percentage of inmates are randomly selected at

18  predetermined regular intervals . . . free from the mandates contained in [plaintiff's initial]

19  partially granted appeal."[8]  Id. at 14.  Therefore, plaintiff's RVRs ## 10 through 15, issued due to

20  plaintiff's refusal to participate in testing after June 6, 2016, were each upheld; the first of these,

21  RVR #10, was issued on June 28, 2016.  See id. (Appeal Log No. CMF-M-16-01357 sustained

22  ―――――――――――――――
[7]  On August 2, 2016, two of plaintiff's appeals were partially granted at Second Level Review,
23  each dismissing the associated RVR and concluding that plaintiff should no longer be required to
    have four urinalyses per month based on the dismissal of his RVR #3.  See ECF No. 7 at 8, 26.
24  Appeal Log No. CMF-M-16-01603 directed the dismissal of RVR # 5 (RVR Log No. 024394).
    See ECF No. 7 at 7-17.  Appeal Log No. CMF-M-16-01726 directed the dismissal of RVR # 6
    (RVR Log No. 028052).  See ECF No. 7 at 18-26.
25  [8]  Although there is nothing in the currently filed exhibits indicating that plaintiff was aware at the
    time of this official change in authority for testing plaintiff, the Ninth Circuit has ruled that prison
26  officials are not required to tell prisoners why they are subjected to random urinalyses.  See
27  Ashanti v. Whitfield, 12 Fed. Appx. 550 (9th Cir. 2001) (citing Thompson v. Souza, 111 F.3d
    694, 702 (9th Cir. 1997).

28

1  the guilt findings on RVR Log Nos. 383924, 380832, 440732, 523244, 574226, and 646926).

2  The decision also found that plaintiff's refusal to provide a urine sample on June 6, 2016 was

3  properly "assessed third offense penalties" based on three of plaintiff's previous findings of guilt

4  for possessing a controlled substance, in 2012 and 2013, when plaintiff was incarcerated at CMC.

5  See id.  The Second Level Decision ruled that "all RVRs received by the appellant after June 27,

6  2016, shall be adjudicated, and processed in accordance with departmental policies."  Id.

7         On September 28, 2016, plaintiff appeared before a Classification Committee due to

8  excessive RVRs and was ordered transferred to a Level IV institution on or before October 17,

9  2016.  See ECF Nos. 9, 10.  Plaintiff notes that the Classification Chrono underlying this

10  Committee action appears to rely on RVRs issued before June 28, 2016, see ECF No. 10 at 1-2,

11  contrary to the Second Level decision in Appeal Log No. CMF-M-16-01357, see ECF No. 8 at

12  13-5.  Plaintiff also notes that several of his RVRs issued on June 28, 2016 and afterwards state

13  that they are based on plaintiff's refusal to participate in testing based on his assignment to the

14  MRDT program.  See e.g., ECF No. 10 at 1; ECF No. 1 at 65 (RVR #10); id. at 74 (RVR #11);

15  and id. at 76 (RVR #12).

16         Plaintiff asserts that his civil rights have been violated under the Fourth, Eighth and

17  Fourteenth Amendments to the United States Constitution.  Plaintiff seeks to prevent his

18  scheduled transfer to another prison.  He also seeks an order of this court halting further testing

19  and requiring an investigation into the reliability of the urinalysis drug tests administered by CMF

20  and other CDCR facilities; dismissal of all of plaintiff's drug-related RVRs at CMF; restoration

21  of plaintiff's credits and privileges, including the return of his TV; an order directing no

22  retaliatory measures by correctional officials; and damages.

23                    B.      Exhaustion of Plaintiff's Administrative Remedies

24         Plaintiff states generally that he exhausted his administrative remedies.  See ECF No. 1 at

25  3.  This matter is more complicated.

26         A prisoner may proceed with a civil rights action only if at least one of the claims

27  identified in the original complaint was administratively exhausted when the complaint was filed

28  [-- and may proceed only on the exhausted claim(s)].  See Ross, 136 S. Ct. at 1854-55, 1859,

1   1862; Woodford, 548 U.S. at 95-6; Rhodes, 621 F.3d at 1004; McKinney, 311 F.3d at 1199; see

2   also Brown, 422 F.3d at 935.

3       A prisoner may add, in an amended complaint, additional claims that were exhausted *after*

4   the filing of the original complaint if they were administratively exhausted *before* the filing of the

5   amended complaint.  This applies to new claims based on challenged conduct that took place

6   *after* the original complaint was filed, see Rhodes, 621 F.3d at 1005; see also Akhtar v. J. Mesa,

7   698 F.3d 1202, 1210 (9th Cir. 2012), as well as new claims based on challenged conduct that took

8   place *before* the original complaint was filed, see Cano v. Taylor, 739 F.3d 1214, 1220 (9th Cir.

9   2014), provided the claims were exhausted *prior* to the filing of the amended complaint.

10      Review of plaintiff's documents indicates that the only matter administratively exhausted

11  *before* plaintiff filed his complaint on July 13, 2016, was his successful challenge to RVR #1.

12  Appeal Log No. CMF-M-16-00659 dismissed RVR #1, which charged plaintiff with morphine

13  use based on his urine sample obtained February 8, 2016.  That decision was issued on April 27,

14  2016.  Because this matter was resolved on Second Level Review, the court finds, for purposes of

15  screening, that no further remedy remained "available" to plaintiff and therefore he did not need

16  to further pursue this appeal in order to exhaust it.  See Brown, 422 F.3d at 935.  **Therefore, the**

17  **complaint properly challenges any matters associated with RVR #1, to the extent plaintiff**

18  **states a cognizable claim, because such matters were administratively exhausted before**

19  **plaintiff filed his complaint.**

20      However, plaintiff did not exhaust claims on his RVRs ## 2 through 9 until they were

21  dismissed on August 12, 2016, on the Second Level Review of Appeal Log No. CMF-M-16-

22  01357.[9]  See ECF No. 8 at 13-5.  Because Second Level Review resulted in the relief plaintiff

23  sought on these RVRs, no further review was necessary in order to exhaust.  Accordingly, the

24  court finds, for purposes of screening, that as of August 12, 2016, plaintiff exhausted his

25  administrative remedies concerning RVRs ## 2 through 9.  **However, because plaintiff**

26  ────────────────

[9]  The interim administrative action on these various RVRs, which is no longer material, further
27  demonstrates that, when plaintiff filed his complaint, he had not exhausted his administrative
    remedies on any RVR except RVR #1.
28

1  **exhausted his administrative remedies on RVRs ## 2 through 9** *after* **he filed his complaint,**

2  **he may, in this court, challenge matters associated with these RVRs only if they are**

3  **included in a First Amended Complaint.**

4  In contrast, the same decision in Appeal Log No. CMF-M-16-01357 sustained the guilty

5  finding on plaintiff's RVRs ## 10 through 15, premised on plaintiff's refusal to cooperate with

6  testing after his placement on the MRUP list on June 6, 2016.  See ECF No. 8 at 14.  The appeal

7  also upheld "third offense" penalties against plaintiff associated with the guilt finding rendered in

8  RVR #10.  There is no indication in plaintiff's documents that he sought Third Level Review of

9  these matters.  **Therefore, plaintiff must exhaust his administrative remedies on these**

10  **matters** *before* **he can challenge them in this court in an amended complaint.  However, for**

11  **the reasons later discussed, it appears that plaintiff is unable to state a cognizable claim**

12  **based on RVR #10 and those which followed.**

13  To summarize, due to the requirement of administrative exhaustion, the scope of the

14  instant complaint is necessarily limited to matters challenging plaintiff's RVR #1 and underlying

15  test, because these were the only matters that appear to have been administratively exhausted

16  when plaintiff filed his complaint.  However, for the reasons set forth below, the complaint does

17  not appear to state a cognizable claim based on RVR # 1, although it provides an essential

18  foundation to plaintiff's provisionally cognizable claims based on RVRs ## 2 through 9.  To

19  pursue claims based on RVRs ## 2 through 9, which were administratively exhausted *after*

20  plaintiff filed his complaint, he must allege such claims in a First Amended Complaint.

21  C.  Potential Legal Claims

22  Plaintiff asserts claims under the Fourth, Eighth, and Fourteenth Amendments premised,

23  respectively, on the right to be free from unreasonable searches, the right to be free from cruel

24  and unusual punishments, and the right to due process.  The following discussion addresses the

25  claims in plaintiff's original complaint that appear to be cognizable, premised on RVR #1;

26  additional claims that may be raised in a First Amended Complaint, premised on RVRs ## 2

27  through 9; and the reasons why RVRs ## 10 and beyond fail to support a cognizable claim.

28

1          1.          Fourth Amendment

2          Compelled urinalysis drug testing is a search within the meaning of the Fourth

3  Amendment.  See Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 617 (1989).

4  However, "[t]he Fourth Amendment prohibits only unreasonable searches."  Bell v. Wolfish, 441

5  U.S. 520, 558 (1979).  In a correctional setting, the reasonableness of a search requires the

6  "[b]alancing [of] the significant and legitimate security interests of the institution against the

7  privacy interests of the inmates[.]"  Id. at 560.  "Prison administrators . . . should be accorded

8  wide-ranging deference in the adoption and execution of policies and practices that in their

9  judgment are needed to preserve internal order and discipline and to maintain institutional

10  security."  Id. at 547.

11          The Ninth Circuit has held that urinalysis drug testing of prisoners for the purpose of

12  detecting the presence of illicit drug use is reasonably related to the legitimate penological goal of

13  keeping illicit drugs out of prisons.  Thompson v. Souza, 111 F.3d 694, 700 (9th Cir. 1997).  The

14  court in Thompson noted with approval the holdings in two circuits that random urinalysis drug

15  testing is not unreasonable if "the procedures for selecting the inmates to be tested are 'truly

16  random.'"  Thompson, 111 F.3d at 702 (citing Spence v. Farrier, 807 F.2d 753, 755 (8th Cir.

17  1986) (random testing does not expose prisoners "to the risk of harassment"); and Forbes v.

18  Trigg, 976 F.2d 308, 315 (7th Cir. 1992) ("testing of all inmates removes the danger that a

19  particular inmate could be singled out and harassed")); accord, Hinkley v. Warner, 616 Fed.

20  Appx. 255 (9th Cir. 2015) (relying on factors set forth in Thompson to find plaintiff's random

21  urinalysis drug test reasonable, and policy underlying such testing "reasonably related to a

22  legitimate penological interest").

23          Thompson went further, and held that even large-scale but nonrandom urinalysis drug test

24  not intended to harass a particular inmate was reasonably related to legitimate penological

25  interests.  Thompson, 111 F.3d at 702 (urinalysis of prisoner not harassment even though he was

26  selected for testing based on the previous drug violation of his cellmate).  Under these

27  circumstances, the Ninth Circuit held that such testing of prisoners "did not violate any

28  constitutional right, let alone a clearly established right."  Id. at 701-02.

13

1    In Thompson, the court identified four factors – scope, manner, justification and place –

2 for determining whether the challenged testing was reasonable under the Fourth Amendment.

3 See Thompson, 111 F.3d at 702 ("[a]pplying the balancing factors discussed in Bell, in light of

4 the test articulated in Turner [v. Safley, 482 U.S. 78 (1987)]").  Plaintiff does not contest the

5 manner or place of the tests he cooperated with, or refused.  Therefore, the court considers the

6 remaining two factors, scope and justification, in assessing the reasonableness of the urinalysis

7 drug tests plaintiff was directed to undertake.

8    The challenged tests and related disciplinary actions fall into three groups, here identified

9 as (1) Group One, consisting of the test resulting in RVR #1 and plaintiff's placement on the

10 MRDT list, and the appeal decision dismissing RVR #1 and directing plaintiff's removal from the

11 MRDT list; (2) Group Two, consisting of the tests and plaintiff's refusals to test resulting in

12 RVRs ## 2 through 9, and the appeal decision dismissing RVRs ## 2 through 9 because based on

13 tests conducted pursuant to plaintiff's erroneous retention on the MRDT list; and (3) Group

14 Three, consisting of plaintiff's refusals resulting in RVRs ## 10 through 15, and beyond.

15    • Group One (RVR #1):

16    Plaintiff concedes that his February 8, 2016 test resulting in RVR #1 was conducted

17 randomly, like his preceding eight tests conducted at CMF from May 2014 to January 2016.

18 See ECF No. 1 at 8.  Hence, both the scope (one test) and justification (random testing) for the

19 urinalysis drug test leading to RVR #1 were reasonable as a matter of law.  **Therefore,**

20 **despite plaintiff's successful challenge to the reliability of this test and resulting**

21 **dismissal of his RVR #1, the undersigned finds that these matters do not state a claim**

22 **under the Fourth Amendment.**

23    • Group Two (RVRs ## 2 through 9):

24    Plaintiff successfully challenged the fact of attempted weekly testing resulting in these

25 RVRs, and obtained dismissal of these RVRs, on the ground that the testing was based on

26 plaintiff's continued but erroneous inclusion on the MRDT list.  CMF officials conceded that

27 the nonrandom targeting of plaintiff, initially justified by the qualified positive test result

28 underlying RVR #1 and plaintiff's placement on the MRDT list, otherwise legitimate

14

correctional criteria, was not reasonable under these circumstances.  **For these reasons, the court finds that the nonrandom testing and attempted testing of plaintiff, resulting in RVRs ##2 through 9, supports a claim that the searches and attempted searches were unreasonable both as to scope (weekly testing under the MRDT program, later found inappropriate) and justification (initial qualified positive test result leading to RVR #1, later found unreliable).  However, because plaintiff exhausted his challenges to RVRs ##2 through 9** *after* **he filed the instant complaint, he may pursue a Fourth Amendment claim based on matters associated with these RVRs only in a First Amended Complaint.** The appeal decision on RVR #1, which directed plaintiff's removal from the MRDT program, provides an essential factual predicate to this claim.

- **Group Three (RVRs ## 10 through 15, and beyond):**

Plaintiff's removal from the MRDT list and placement in the MRUP program rendered the ensuing requests for his urine samples random,[10] and hence reasonable under Thompson, 111 F.3d at 702.  **Therefore, the court finds that neither the attempts of correctional staff to obtain urine samples from plaintiff nor plaintiff's refusals to cooperate, resulting in RVR #10 and beyond, state a cognizable claim under the Fourth Amendment.**

2.    Eighth Amendment

The Supreme Court has held that "a prison official violates the Eighth Amendment only when two requirements are met.  First, the deprivation alleged must be, objectively, 'sufficiently

---

[10] CDCR's Operations Manual defines the "Mandatory Random Urinalysis Program" as follows, DOM 52010.12:

> The inmate is selected by the department's mandatory standardized random drug testing selection process, in where, a small percentage of inmates are randomly selected at predetermined regular intervals (e.g., daily, weekly) from a data file produced from the department's Strategic Offender Management System.

The "Random Selection Method" is defined as follow, DOM 52010.13:

> Random testing shall be conducted a minimum of four days per week.  Random selection shall be made by a computer program which assures the random nature of the selection.  Inmates shall be tested each time they are selected, regardless of the recency of the inmates' last test.  Inmates shall not be subject to additional disciplinary action for a positive test if that positive test is cumulative evidence of a previously charged disciplinary action.

1   serious;' a prison official's act or omission must result in the denial of 'the minimal civilized

2   measure of life's necessities[.]' . . . The second requirement follows from the principle that 'only

3   the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'  To violate the

4   Cruel and Unusual Punishments Clause, a prison official must have a 'sufficiently culpable state

5   of mind.'  In prison-conditions cases that state of mind is one of 'deliberate indifference' to

6   inmate health or safety.  Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citations omitted).  "[A]

7   prison official cannot be found liable under the Eighth Amendment for denying an inmate

8   humane conditions of confinement unless the official knows of and disregards an excessive risk

9   to inmate health or safety; the official must both be aware of facts from which the inference could

10  be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id.

11  at 837.

12          For the reasons previously noted, the Ninth Circuit has concluded that random urinalysis

13  drug testing, and nonrandom testing that is not intended to harass a particular inmate, are

14  constitutional under the Fourth Amendment because rationally related to legitimate penological

15  objectives.  Thompson, 111 F.3d at 700; accord, Hinkley, 616 Fed. Appx. 255.  Similarly, in the

16  context of prison searches, "[t]he Eighth Amendment protects prisoners from searches conducted

17  only for 'calculated harassment.'"  Vigliotto v. Terry, 873 F.2d 1201, 1203 (9th Cir. 1989)

18  (quoting Hudson v. Palmer, 468 U.S. 517, 530 (1984)).  "'It is obduracy and wantonness, not

19  inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and

20  Unusual Punishment Clause[.]'"  Vigliotto, 873 F.2d at 1203 (quoting Whitley v. Albers, 475

21  U.S. 312, 319 (1986)).

22          The court has located no authority to support a finding that urinalysis drug testing of

23  prisoners is "objectively, 'sufficiently serious,'" resulting "in the denial of 'the minimal civilized

24  measure of life's necessities.'"  Farmer, 511 U.S. at 834.  Rather, the converse is true.  See e.g.,

25  Curtis v. Padua, , 2015 U.S. Dist. LEXIS 153416, at *6 (E.D. Cal. Nov. 12, 2015) (Case No.

26  1:15-cv-01682-MJS (PC) ("Plaintiff's challenge to the urine testing as violative of the Eighth

27  Amendment fails because there is no suggestion that the testing is, objectively, sufficiently

28  serious to satisfy the first prong of an Eighth Amendment analysis.").

16

Further, plaintiff has alleged no facts supporting a reasonable inference that any defendant knew of and disregarded an excessive risk of physical or mental harm to plaintiff based on any of the challenged tests or requested tests.  See Hinkley, 616 Fed. Appx. 255 ("The district court properly dismissed Hinkley's Eighth Amendment claim because Hinkley failed to allege facts sufficient to show that defendants knew of and disregarded a substantial risk of physical or mental harm to Hinkley when he was selected for a random urinalysis drug test.") (Citing, inter alia, Farmer, 511 U.S. at 837.); see also Johnson v. Rink, 2016 WL 2745412, at *3-5, 2016 U.S. Dist. LEXIS 62573, at *6-10 (S.D. Cal. May 11, 2016) (Case No. 3:15-cv-1531GPC JMA) (dismissing Eighth Amendment claim based on disciplinary sanctions for failing to provide urine samples); Johnson v. Paramo, 2015 WL 6758304, at *5, 2015 U.S. Dist. LEXIS 150597, at *10-3 (S.D. Cal. Nov. 5, 2015) (Case No. 15-cv-1531 GPC JMA) (dismissing Eighth Amendment claim on screening because the complaint failed "to show that any prison official knew of and disregarded a substantial risk of physical or mental harm to [plaintiff] by requiring him to submit to urinalysis," or by imposing the resulting disciplinary sanctions).[11]

Finally, plaintiff has alleged no facts supporting a reasonable inference that his urinalysis drug testing and attempted testing were intended to harass him.  Plaintiff's positive test resulting in RVR #1 provided at least temporary support for his placement on the MRDT list, and his subsequent RVRs based on his improper retention on the MRDT list were later dismissed.

---

[11]   The district court in Johnson v. Paramo relied on Hinkley and the following cases to find that plaintiff had not stated an Eighth Amendment claim, 2015 WL 6758304, at *5, 2015 U.S. Dist. LEXIS 150597, at *12:

> [S]ee also Hurd v. Scribner, No. CIV 06CV0412 JAH LSP, 2007 U.S. Dist. LEXIS 32651, 2007 WL 1989688, at *14-15 (S.D. Cal. May 2, 2007) (finding prisoner's disciplinary conviction for refusing to submit a urine sample in violation of California Code of Regulations, title 15, § 3290(d), which resulted in his being subject to a "90-day credit forfeiture, a 30-day loss of telephone privileges, and a 10-day loss of yard privileges," insufficient to constitute cruel and unusual punishment); cf., Sheehy v. Palmateer, 68 F. App'x 77, 78-79 (9th Cir. 2003) (finding prison officials entitled to qualified immunity based on claim that they subjected plaintiff to disciplinary sanctions for failing to provide a urine sample in violation of the Eighth Amendment).

1    **For these reasons, the undersigned finds that plaintiff is unable to allege a cognizable**

2    **Eighth Amendment claim based on any of the conduct he challenges in this action.**

3    **Therefore, plaintiff's Eighth Amendment claim will be dismissed without leave to amend.**

4                            3.      Fourteenth Amendment

5          The Fourteenth Amendment provides that the State shall not "deprive any person of life,

6    liberty or property, without due process of law."  U.S. Const. Amend. XIV, § 1.  Protected liberty

7    interests may arise from two sources – the Due Process Clause itself and state law.  Sandin v.

8    Connor, 515 U.S. 472, 483-84 (1995); see also Wilkinson v. Austin, 545 U.S. 209, 222-24

9    (2005).  In the prison context, constitutional due process protections are "generally limited to

10   freedom from restraint which, while not exceeding the sentence in such an unexpected manner as

11   to give rise to protection by the Due Process Clause of its own force, nonetheless imposes an

12   atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

13   Sandin, 515 U.S. at 483-84.

14         Prisoners subjected to disciplinary action are entitled to certain procedural protections

15   under the Due Process Clause, although they are not entitled to the full panoply of rights afforded

16   to criminal defendants.  See Wolff v. McDonnell, 418 U.S. 539, 556 (1974); see also

17   Superintendent v. Hill, 472 U.S. 445, 455-56 (1985); United States v. Segal, 549 F.2d 1293, 1296-

18   99 (9th Cir. 1977) (prison disciplinary proceedings command the least amount of due process along

19   the prosecution continuum).

20         Prison disciplinary actions are subject to the following procedural requirements under

21   Wolff:  (1) written notice of the charges; (2) a hearing, with at least 24-hours advance notice;

22   (3) a written statement by the fact finders of the evidence relied on and the reasons for taking

23   disciplinary action; (4) the prisoner's right to call witnesses in his or her defense, if doing so

24   would not be unduly hazardous to institutional safety or correctional goals; and (5) legal

25   assistance to prisoners who are illiterate or whose issues are particularly complex.  Wolff, 418

26   U.S. at 556-71.  If these minimum requirements are met, procedural due process has been

27   satisfied.

28         In addition, the decision rendered on a disciplinary charge must be supported by "some

                                                    18

evidence" in the record. <u>Hill</u>, 472 U.S. at 455-56.  The evidence must have "some indicia of reliability."  <u>Cato v. Rushen</u>, 824 F.2d 703, 705 (9th Cir. 1987) (citations omitted).  The "some evidence" standard is met if "there is any evidence in the record that could support the conclusion reached."  <u>Hill</u>, 472 U.S. at 455-56.  "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact."  Id. at 456.  Nor must the evidence relied on "logically preclude[] any conclusion but the one reached."  Id. at 457.  Rather, if there is any evidence in the record that supports the challenged decision, it is not arbitrary and thus comports with minimum due process protections. <u>Id.</u>

Finally, "where. . . a successful § 1983 action would not necessarily result in an earlier release from incarceration. . . the favorable termination rule of <u>Heck</u> and <u>Edwards</u> does not apply."  <u>Ramirez v. Galaza</u>, 334 F.3d 850, 858 (9th Cir. 2003) (citing <u>Heck v. Humphrey</u>, 512 U.S. 477, 483, 486-87 (1994), and <u>Edwards v. Balisok</u>, 520 U.S. 641, 644 (1997)).  If a prisoner's challenge to disciplinary proceedings does not lie at "the core of habeas corpus," that is, "the invalidity of the disciplinary proceedings, and therefore the restoration of good-time credits, would not necessarily affect the length of time to be served," then the challenge may be brought pursuant to Section 1983.  <u>Nettles v. Grounds</u>, 830 F.3d 922, 929, 931 (9th Cir. July 26, 2016), petition for cert. filed Oct. 21, 2016 (Case No. 16-6556).

Significantly, plaintiff has not alleged any facts supporting a procedural due process claim; that is, he does not allege that any of his RVRs based on a positive urinalysis test or on his refusal to cooperate with testing failed to meet the procedural due process requirements set forth in <u>Wolff</u>.  Rather, plaintiff's due process challenges are based on the alleged unreliability of CMF's urinalysis drug testing, resulting in alleged false positives and providing the rationale for plaintiff's refusals to cooperate.  Therefore, the court considers only plaintiff's "substantive due process" claims, under <u>Hill</u>, for each of the three identified groups of RVRs.  **For the reasons set forth below, the court finds that plaintiff's allegations fail to allege a cognizable due process claim.**

////

- Group One (RVR #1):

Plaintiff obtained the reversal of RVR #1 by successfully contending that the underlying test was not reliable.  The RVR was dismissed on appeal "in the interest of justice" because "the toxicology report indicated the sample was possibly diluted which could be a result of tampering."  ECF No. 1 at 36.  Notwithstanding this ultimate favorable ruling, the original finding of guilt on RVR #1 was based on "some evidence" in the record, specifically, the underlying lab result that was positive for morphine.  Id. at 30.  **Therefore, plaintiff is unable to state a cognizable due process claim premised on RVR #1.**

- Group Two (RVRs ## 2 through 9):

Plaintiff's tests resulting in RVRs ## 2 through 4, and the tests plaintiff refused, resulting in RVRs ## 5 through 9, were each undertaken based on the error of plaintiff's continued placement on the MRDT list after the appeal decision overturning RVR #1 and directing plaintiff's removal from the list.

The finding of guilt on plaintiff's RVR #2 was sustained on administrative review because the underlying lab report indicated that plaintiff's urine sample was positive for morphine. RVRs ## 3 and 4 were dismissed at the disciplinary stage due to the apparent unreliability of the underlying positive test results.  See ECF No. 1 at 45, 52.  Each of these RVRs were ultimately dismissed on appeal because the underlying tests were conducted in error based on plaintiff's name remaining on the MRDT list after its removal was ordered pursuant to the appeal decision on RVR #1.  None of these RVRs present circumstances supporting a substantive due process claim – RVR #2 was sustained on appeal based on "some evidence," while RVRs ## 3 and 4 were dismissed for lack of sufficient evidence at the disciplinary stage.  **For these reasons, plaintiff is unable to state a cognizable due process claim premised on RVRs ##2, 3 or 4, or their underlying test results.**

For different reasons, plaintiff's refusals to provide urine samples when so directed by prison officials, resulting in RVRs ## 5 through 9, constituted "some evidence" for the resulting disciplinary reports, even if later overturned.  Hill, 472 U.S. at 455-56.  Under CDCR regulations, a prisoner's refusal to submit to an authorized test for drugs or alcohol is a

20

"serious rule violation" as well as a "Division 'F' offense," that may result in credit forfeiture up to 30 days.  See Cal. Code Regs. Tit. 15, § 3315(a)(3)(R) ("[r]efusal to submit to a test for controlled substances or alcohol" is a "serious rule violation"); id., § 3323(h)(5) ("[r]efusing to provide a urine specimen for the purpose of testing for the presence of controlled substance(s) or alcohol" is a "Division 'F' offense," subject to "credit forfeiture of 0-30 days").  **For this reason, the court finds that plaintiff is unable to state cognizable due process claims challenging RVRs ## 5 through 9.**

- Group Three (RVRs ## 10 through 15, and beyond):  Plaintiff's remaining RVRs were issued in response to plaintiff's refusal to cooperate with testing after his placement in the MRUP program.  RVRs ## 10 through 15 were upheld in the Second Level Decision issued August 12, 2016, in Appeal Log No. CMF-M-16-01357, see ECF No. 8 at 13-5, and plaintiff has not indicated that he sought Third Level Review.  Nevertheless, even if plaintiff demonstrates administrative exhaustion of these and/or later RVRs, there is no basis to find that any of the RVRs in this group were issued in violation of plaintiff's due process rights. Further, as noted above, plaintiff's refusal to provide a urine sample when directed to do so by a prison official fails to state a substantive due process claim because plaintiff's refusal provides "some evidence" supporting the resulting RVR.  **Therefore, the undersigned finds that plaintiff is unable to state a cognizable due process claim challenging RVRs ## 10 through 15, or any subsequent RVR imposed in response to plaintiff's refusal to provide a urine sample.**

4.      Summary of Cognizable Claims

For the foregoing reasons, the court finds that **plaintiff is unable to state a cognizable claim, based on any challenged RVR or underlying test, under the Eighth and Fourteenth Amendments**.  **Plaintiff is also unable to state a cognizable Fourth Amendment claim based on the tests or attempted tests underlying RVR #1, or RVR #10 and beyond.  However, with respect to plaintiff's RVRs ##2 through 9, plaintiff may be able to state a cognizable Fourth Amendment claim** based on his unauthorized nonrandom urinalysis drug tests and attempted tests due to plaintiff's erroneous inclusion in the MRDT program.  However, as previously noted,

21

1    plaintiff may attempt to pursue his Fourth Amendment challenge to RVRs ## 2 through 9, which

2    he administratively exhausted *after* filing his complaint, only in a First Amended Complaint.

3                    D.      Defendants

4          The defendants named in this action are CMF Warden R. Fox, CMF Associate Warden C.

5    Tileston, and CMF Hearing Officer Lt. V. Martinez.  For the reasons that follow, the court finds

6    that the complaint fails to state cognizable claims against Fox and Martinez, who will be

7    dismissed from this action without prejudice.  The court further finds that, although the instant

8    complaint does not state a cognizable claim against Tileston, plaintiff may be able to state a claim

9    against Tileston and/or CMF's Drug Testing Coordinator, in a First Amended Complaint.

10         Plaintiff's only claims against defendant Martinez challenge the guilt finding he imposed

11   on RVR #1 at plaintiff's disciplinary hearing, and plaintiff's associated placement on the MRDT

12   list.  Because there was "some evidence" supporting the guilty finding, and the disciplinary

13   hearing comported with procedural due process, plaintiff cannot state a Fourteenth Amendment

14   claim.  Because the test underlying this RVR was conducted randomly, plaintiff cannot state a

15   Fourth Amendment claim.  Nor do these allegations support an Eighth Amendment claim.

16   **Therefore, the court finds that plaintiff is unable to state a cognizable claim against**

17   **defendant Martinez, who will be dismissed from this action without prejudice.**

18         Against defendant CMF Warden Fox, plaintiff alleges that he upheld the guilty finding on

19   plaintiff's RVR #2, pursuant to the Second Level Review decision issued June 21, 2016, in

20   Appeal Log No. CMF-M-16-01262.  However, Warden Fox later dismissed RVR #2, along with

21   RVRs ## 3 through 9, pursuant to the Second Level decision issued August 12, 2016, in Appeal

22   Log No. CMF-M-16-01357.  Moreover, Warden Fox reversed the finding of guilt on plaintiff's

23   RVR #1, in the Second Level decision issued April 27, 2016, in Appeal Log No. CMF-M-16-

24   00659.  See ECF No. 1 at 11-2.

25         None of this conduct supports a cognizable claim against Warden Fox.  A defendant's

26   participation in the administrative review of a plaintiff's inmate appeal does not give rise to a

27   cause of action, particularly one premised on due process rights.  See, e.g., Mann v. Adams, 855

28   F.2d 639, 640 (9th Cir. 1988), cert. denied, 488 U.S. 89 (1988) (no constitutional right to an

1    inmate appeal or grievance process).  Thus, "participation in the prison grievance process does

2    not give rise to a cause of action."  Lewis v. Ollison, 571 F. Supp. 2d 1162, 1170 (C.D. Cal.

3    2008) (dismissing corrections personnel who participated in the review and denial of plaintiff's

4    inmate appeals); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (prison official's

5    involvement in administrative appeals process cannot serve as a basis for liability in a

6    Section1983 action); Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) ("[A prison]

7    grievance procedure is a procedural right only, it does not confer any substantive right upon the

8    inmates.")  Moreover, defendant Fox's participation in plaintiff's administrative grievance

9    process indicates that Fox sought to remedy the error of plaintiff's retention on the MRDT list.

10   **For these reasons, the court finds that neither the allegations of the complaint nor any of**

11   **plaintiff's other filings support a cognizable constitutional claim against defendant Fox, who**

12   **will also be dismissed from this action without prejudice.**

13        Plaintiff alleges that defendant Associate Warden Tileston is also CMF Chief Disciplinary

14   Officer.  On May 4, 2016, in response to Warden Fox's decision in Appeal Log No. CMF-M-16-

15   01357, defendant Tileston formally dismissed plaintiff's RVR #1 and ordered the removal of

16   plaintiff from the MRDT program.  ECF No. 1 at 38.  However, on May 12, 2016, Tileston found

17   plaintiff guilty of RVR #2, and apparently again placed plaintiff on the MRDT list.  Id. at 41-2;

18   see also id. at 15, 39-43.  RVR #2 was later dismissed, along with RVRs ## 3 through 9, because

19   the underlying test was conducted based on the erroneous continued inclusion of plaintiff's name

20   on the MRDT list in tandem with RVR #1.

21        Thus, it appears that defendant Tileston ordered the removal of plaintiff's name from the

22   MRDT list based on the dismissal of RVR #1, but 8 days later ordered plaintiff's name back on

23   the list due to the positive test underlying RVR #2, which was itself conducted based on

24   plaintiff's original inclusion on the MRDT list.  It was not until August 12, 2016, that plaintiff's

25   RVRs ## 2 through 9, issued "between April 04, 2016 and June 27, 2016," were dismissed due

26   the "erroneous placement" of plaintiff on the MRDT list prior to June 6, 2016.  See ECF No. 8 at

27   13-5.  However, if there are grounds for alleging that defendant Tileston was responsible for

28   plaintiff's erroneous testing and attempted testing under the MRDT program, resulting in RVRs

                                              23

1    ## 2 through 9, then plaintiff may be able to state a Fourth Amendment claim against him.

2         Additionally, CDCR regulations provide that a "Drug Testing Coordinator" is responsible,

3    inter alia, for "[a]pproving and reviewing the accuracy of the MRDT list prior to testing."  See

4    DOM § 52010.16.  Defendant Tileston's May 4, 2016 dismissal order was addressed to "Felix

5    Hoppe, Correctional Lieutenant, Mandatory Random Drug Testing Coordinator."  See ECF No. 1

6    at 38.  If there are grounds for asserting that Lt. Hoppe was responsible for plaintiff's erroneous

7    testing and attempted testing under the MRDT program, resulting in RVRs ## 2 through 9, then

8    plaintiff may be able to state a Fourth Amendment claim against him.

9         **Plaintiff will be permitted the opportunity to allege a Fourth Amendment claim**

10   **against defendant Tileston and/or Lt. Hoppe in a First Amended Complaint.**  However,

11   plaintiff is cautioned that he must allege, in specific terms, what each named defendant did, or

12   failed to do, that resulted in the alleged violation of plaintiff's constitutional rights.  Rule 8,

13   Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-

14   harmed-me accusation[.]"  Iqbal, 556 U.S. at 678 (citations omitted).  "Because vicarious liability

15   is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant,

16   through the official's own individual actions, has violated the Constitution."  Id. at 676; see also

17   Jones v. Community Redevelopment Agency of City of Los Angeles, 733 F.2d 646, 649 (9th

18   Cir.1984) (even a pro se plaintiff must "allege with at least some degree of particularity overt acts

19   which defendants engaged in" in order to state a cognizable claim).

20              E.    Potential Relief

21         In his complaint and subsequent filings, plaintiff seeks dismissal of all outstanding RVRs

22   premised on his refusal to cooperate with urinalysis drug tests; an order halting further testing and

23   requiring an investigation into the reliability of the urinalysis drug tests administered by CMF and

24   other CDCR facilities; an order requiring the return of plaintiff's TV; restoration of credits and

25   privileges that were lost pursuant to the challenged RVRs; an order preventing plaintiff's transfer

26   to another prison; an order directing no retaliatory measures by correctional officials; and

27   damages.  **For the reasons set forth below, the court finds that the only potential relief that**

28   **appears to be available to plaintiff are damages, which may be nominal at best.**

1    The dismissal of RVRs #1-9, and apparent restoration of credits previously lost pursuant

2    to those RVRs, resolved plaintiff's requests for injunctive relief premised on those RVRs and

3    underlying tests.  Thereafter, due to the presumptive constitutionality of plaintiff's subsequent

4    placement in the MRUP program, plaintiff has no cognizable basis for refusing to participate in

5    such testing or for obtaining an injunction challenging his refusals.

6    Similarly, plaintiff's efforts to obtain an order of this court halting further testing and

7    attempted testing, and requiring an investigation into the reliability of the urinalysis drug tests

8    administered by CMF and other CDCR facilities, are unavailing.  Plaintiff does not have a

9    constitutional right to be free from urinalysis drug testing provided it conforms with constitutional

10   standards and CDCR collection and testing procedures, see DOM § 52010.16 et seq., the results

11   of which are presumptively valid unless proven otherwise.  "Plaintiff's protection from the

12   arbitrary action of prison officials lies in 'the procedural due process requirements as set forth in

13   Wolff v. McDonnell.'"  Ellis v. Foulk, 2014 WL 4676530, at *2, 2014 U.S. Dist. LEXIS 131831,

14   at *6 (E.D. Cal. Sept. 18, 2014) (quoting Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir. 1984));

15   see also Hill, 472 U.S. at 455-56 (positive test results satisfy the "some evidence" requirement of

16   substantive due process).

17   This court is also without authority to direct prison officials to refrain from retaliating

18   against plaintiff for pursuing this action.  CDCR officials are required to comply with the law.  In

19   the present case, plaintiff has not alleged, and the current record does not support an inference,

20   that any of the challenged RVRs were issued in retaliation for plaintiff engaging in

21   constitutionally protected conduct.  Should plaintiff discern grounds for stating a retaliation

22   claim, he must administratively exhaust such claim before bringing it to this court.  Plaintiff is

23   informed that an adverse official action may sustain a retaliation claim even though the

24   challenged action, standing alone, would not state a cognizable claim.[12]

25   _____

26   [12]  Filing administrative grievances and initiating litigation are constitutionally protected activities, and it is impermissible for prison officials to retaliate against prisoners for engaging in these activities.  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); see also Silva v. Di

27   Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011).
     A plaintiff need not prove that the alleged retaliatory action, in itself, violated a

28   (continued…)

1    Further, prisoners have no constitutional right to a particular security classification,

2    placement in a particular prison, or protection from transfer to another prison.  See Meachum v.

3    Fano, 427 U.S. 215, 223-225 (1976); Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976) (same applies

4    to federal prisoners); see also Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007) (a raised

5    classification score does not implicate a state-created liberty interest); Hernandez v. Johnston, 833

6    F.2d 1316, 1319 (9th Cir. 1987) (declining to find such interest).  "[I]t is well settled that prison

7    officials must have broad discretion, free from judicial intervention, in classifying prisoners in

8    terms of their custodial status."  McCord v. Maggio, 910 F.2d 1248, 1250 (5th Cir. 1990)

9    (citations and internal quotation marks omitted); see also, Garcia v. Biter, 2016 WL 2625840, at

10   *2 n.2, 2016 U.S. Dist. LEXIS 61252, at *5 n.2 (Case No. 1:13cv0599 LJO SKO P) (E.D. Cal.

11   May 9, 2016) ("Plaintiff's housing status and other custody or classification factors are left to the

12   sound discretion of prison officials.").  This court is without authority to interfere with

13   correctional decisions concerning plaintiff's classification and housing, including his prospective

14   transfer to another correctional facility.

15    Nor does plaintiff have recourse to compel the return of his TV.  Plaintiff is informed of

16   the standards for stating a new and separate due process claim based on the confiscation of his

17   TV,[13] which must be administratively exhausted before bringing the matter to this court.

---

18   constitutional right.  Pratt v. Rowland, 65 F.3d 802, 806 (1995) (to prevail on a retaliation claim,
     plaintiff need not "establish an independent constitutional interest" was violated); see also Hines
19   v. Gomez, 108 F.3d 265, 268 (9th Cir.1997) (upholding jury determination of retaliation based on
     filing of a false rules violation report); Rizzo v. Dawson, 778 F.2d 527, 531(transfer of prisoner to
20   a different prison constituted adverse action for purposes of retaliation claim).  Rather, the interest
     asserted in a retaliation claim is the right to be free of conditions that would not have been
21   imposed but for the alleged retaliatory motive.
22    "Within the prison context, a viable claim of First Amendment retaliation entails five
     basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2)
23   because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's
     exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate
24   correctional goal."  Rhodes, 408 F.3d at 567-68 (fn. and citations omitted).  "[A] plaintiff who
     fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm" as
25   a retaliatory adverse action.  Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009) (citing
     Rhodes, 408 F.3d at 568, n.11).
26   [13]  The unauthorized deprivation of property by a prison official, whether intentional or negligent,
     does not state a claim under Section 1983 if the state provides an adequate post-deprivation
27   remedy.  See Hudson v. Palmer, 468 U.S. 517, 533 (1984).  California law provides such an
     adequate post-deprivation remedy.  See Barnett v. Centoni, 31 F.3d 813, 816–17 (9th Cir.1994)
28   (continued...)

26

1    Despite the required dismissal of these various claims for relief, plaintiff may still pursue

2   claims for damages premised on the alleged violations of his constitutional rights.  Plaintiff does

3   not allege that he suffered physical injury as a result of the conduct challenged in this action, and

4   therefore may not pursue a damages claim premised on mental or emotional injury.  See 42

5   U.S.C. § 1997e(e) (prisoner may not recover damages for mental or emotional injury suffered

6   while in custody without a showing of physical injury). [14]  However, "[t]o the extent that

7   [plaintiff] has actionable claims for compensatory, nominal or punitive damages – premised on

8   violations of his [constitutional] rights, and not on any alleged mental or emotional injuries . . .

9   the claims are not barred by § 1997e(e)."  Oliver v. Keller, 289 F.3d 623, 630 (9th Cir. 2002).

10    Accordingly, plaintiff's relief in this action, if any, is limited to damages.  While a

11   plaintiff is generally entitled to seek nominal, compensatory and punitive damages premised on

12   the alleged violations of his constitutional rights, **in the present case, where officials apparently**

13   **sought to correct the error of retaining plaintiff on the MRDT list, it is unlikely that**

14   **plaintiff can recover more than nominal damages should he proceed with and prevail in this**

15   **action.**

16    V.    PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

17    Plaintiff has filed a premature motion for summary judgment.  See ECF No. 7.  By this

18   motion, plaintiff seeks suspension of urinalysis drug testing, dismissal of all his RVRs, and an

19   award of damages.

20    Summary judgment is appropriate only on a fully developed record, when the moving

21   party attempts to show that there is "no genuine dispute as to any material fact and the movant is

22

23   (per curiam) (citing Cal. Govt. Code §§ 810–95).  Therefore, only an intentional and authorized

24   deprivation of property may constitute an actionable Section 1983 claim, for violation of the Due
     Process Clause.  An authorized deprivation is one carried out pursuant to established state

25   procedures, regulations or statutes.  Piatt v. McDougall, 773 F.2d 1032, 1036 (9th Cir. 1985).  In
     the instant case, plaintiff does not allege whether defendants' challenged deprivation of plaintiff's

26   property was authorized.
     [14]  This statute "requires a prior showing of physical injury that need not be significant but must

27   be more than de minimis."  Oliver v. Keller, 289 F.3d 623, 626-28 (9th Cir. 2002); see also Pierce
     v. County of Orange, 526 F.3d 1190, 1224 (9th Cir. 2008).

28

1    entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The instant action is still at the

2    preliminary screening stage, pursuant to 28 U.S.C. § 1915A.  No defendant has been served

3    process or otherwise appeared in this action.  No discovery has been conducted and hence there

4    has been no formal development of material facts.  Should this case proceed on the merits, the

5    court will issue a Discovery and Scheduling Order that sets forth the deadlines for conducting

6    discovery and filing dispositive motions such as a motion for summary judgment.

7            **For these reasons, plaintiff's motion for summary judgment must be denied without**

8    **prejudice as prematurely filed.**  Nevertheless, as earlier noted, the court has relied on some of

9    the facts and exhibits contained in this filing to understand, and provide a current assessment of,

10   plaintiff's claims.

11           VI.     PLAINTIFF's MOTIONS FOR EXTRAORDINARY RELIEF

12           Plaintiff has filed two motions requesting the court's pre-screening intervention.  The

13   court construes each of these motions as an ex parte request for a temporary restraining order.

14   The following legal standards apply to these motions.

15           A.      Legal Standards

16           Under Rule 65, Federal Rules of Civil Procedure, "[t]he court may issue a temporary

17   restraining order without written or oral notice to the adverse party" only if "specific facts in an

18   affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or

19   damage will result to the movant before the adverse party can be heard in opposition."  Fed. R.

20   Civ. P. 65(b)(1).  Obtaining ex parte relief under Rule 65 is limited to situations where notice to

21   the adverse party would likely prove useless.  See Reno Air Racing Ass'n v. McCord, 452 F.3d

22   1126, 1130 (9th Cir. 2006) (citing cases).  The legal standards for obtaining a temporary

23   restraining order are essentially identical to those for obtaining a preliminary injunction.  See

24   Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc., 181 F. Supp. 2d 1111, 1126 (E.D.

25   Cal. 2001); Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co., 887 F. Supp. 1320, 1323

26   (N.D. Cal. 1995).

27           "The sole purpose of a preliminary injunction is to 'preserve the status quo ante litem

28   pending a determination of the action on the merits.'"  Sierra Forest Legacy v. Rey, 577 F.3d

1  1015, 1023 (9th Cir. 2009) (quoting L.A. Memorial Coliseum Comm'n v. NFL, 634 F.2d 1197,

2  1200 (9th Cir.1980)).  In evaluating the merits of a motion for preliminary injunctive relief, the

3  court considers whether the movant has shown that "he is likely to succeed on the merits, that he

4  is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities

5  tips in his favor, and that an injunction is in the public interest."  Winter v. Natural Resources

6  Defense Council, 555 U.S. 7, 20 (2008); accord Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127

7  (9th Cir. 2009).  "At a minimum, a plaintiff seeking preliminary injunctive relief must

8  demonstrate that it will be exposed to irreparable harm.  Speculative injury does not constitute

9  irreparable injury sufficient to warrant granting a preliminary injunction.  A plaintiff must . . .

10  demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief."

11  Caribbean Marine Serv. Co. v. Baldrige, 844 F.2d 668, 674 (9th Cir. 1988) (citations omitted).

12  "'[S]erious questions going to the merits' and a hardship balance that tips sharply toward the

13  plaintiff can support issuance of an injunction, assuming the other two elements of the Winter test

14  are also met."  A preliminary injunction is appropriate when a plaintiff demonstrates . . . "serious

15  questions going to the merits and a hardship balance [] tips sharply toward the plaintiff, . . .

16  assuming the other two elements of the Winter test are also met."  Alliance for the Wild Rockies

17  v. Cottrell, 632 F.3d 1127, 1132 (9th Cir.  2011).

18       An injunction against individuals who are not parties to the action is strongly disfavored.

19  Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100 (1969).  Additionally, in cases

20  brought by prisoners involving conditions of confinement, any preliminary injunction "must be

21  narrowly drawn, extend no further than necessary to correct the harm the court finds requires

22  preliminary relief, and be the least intrusive means necessary to correct the harm."  18 U.S.C. §

23  3626(a)(2).

24       B.    "Motion for Immediate Court Action/Intervention"

25       Plaintiff filed his initial motion for court intervention on July 26, 2016.  See ECF No. 4.

26  This motion, entitled a "Motion for Immediate Court Action/Intervention," notifies the court that,

27  on June 24, 2016, plaintiff was required to appear before the Classification Committee for

28  excessive RVRs, and that he thereafter received six additional RVRs, each apparently based on

1   plaintiff's refusal to cooperate with testing.  Plaintiff contends that, "[i]f this court does not order

2   the testing to stop or be suspended until this matter is fully adjudicated, plaintiff will end up in Ad

3   Seg, and transferred, with his property 'lost.'"  See ECF No. 4.

4        For the reasons set forth earlier, this court is without authority to intervene in the decisions

5   of correctional officials concerning the classification and transfer of prisoners.  See Meachum

6   427 U.S. at 224-5.  Nor, on this record, does plaintiff state a cognizable claim for the return of his

7   personal property.  See n.13, supra, and related text.  Moreover, plaintiff's RVRs issued before

8   June 28, 2016 have now been dismissed, rendering moot plaintiff's challenges to the

9   Classification Committee action premised on these RVRs on June 24, 2016.  Thus, plaintiff has

10   not demonstrated a likelihood of success on the merits of his claims, or any other ground for

11   granting preliminary relief.  Therefore, the undersigned recommends that this request for court

12   intervention be denied.

13              C.      "Confirmed Action" (Classification for Transfer)

14        Plaintiff's second motion for court intervention, entitled "Confirmed Action Filing," was

15   filed with the court on September 28, 2016.  See ECF No. 9.  This document informs the court

16   that plaintiff was scheduled to appear before a Classification Committee on September 29, 2016,

17   for excessive RVRs, for which he would be considered for transfer to a Level IV institution,

18   probably "by October 17, 2016 or sooner."  Id. at 1.  Plaintiff asserts that this is a "life threatening

19   situation" since he is likely to be assaulted at a Level IV prison based on assumptions about

20   inmates transferred from a "Sensitive Needs Yard" prison like CMF.  Id.

21        Thereafter, plaintiff submitted a document entitled "Final Submission/Exhibit," which

22   includes a copy of a September 28, 2016 Classification Committee Chrono, prepared in

23   anticipation of the September 29, 2016 hearing.  See ECF No. 10 at 2-3.  The Chrono provides

24   that plaintiff's numerous RVRs, commencing June 13, 2016, demonstrate a "significant

25   disciplinary history" including credit forfeitures, plaintiff's removal from his job assignment, and

26   his designation as a "Program Failure;" the Chrono recommends that plaintiff be transferred to

27   Level IV facility.  Id.  Plaintiff again avers that his transfer to a Level IV facility will present "a

28   ////

1   life threatening situation," and that officials only "want to get rid of a problem and avoid

2   investigation."  Id.

3   The court again informs plaintiff that it is without authority to intervene in the decisions of

4   correctional officials concerning the classification and transfer of prisoners.  See Meachum  427

5   U.S. at 224-5.  If the September 28, 2016 Classification Committee Chrono relies on previously

6   dismissed RVRs, or on RVRs premised on tests reportedly conducted pursuant to the MRDT

7   program after plaintiff's June 6, 2016 placement on the MRUP program, plaintiff may so allege in

8   a First Amended Complaint, if these matters are administratively exhausted.  However, these

9   matters do not support this court's intervention to prevent the asserted harm and preserve the

10  status quo.  Therefore, the undersigned recommends that this request for court intervention be

11  denied.

12         VIII.   LEAVE TO FILE FIRST AMENDED COMPLAINT

13         Plaintiff's complaint is dismissed with leave to file a First Amended Complaint, subject to

14  the legal standards set forth in this order.  A First Amended Complaint will also be screened by

15  the court pursuant to 28 U.S.C. § 1915A.

16         Plaintiff is advised that a First Amended Complaint must clearly identify each defendant

17  and their respective allegedly unconstitutional conduct.  The charging allegations must be clearly

18  set forth in the amended complaint so that each defendant has fair notice of the claims against

19  him.

20         In an amended complaint, the allegations must be set forth in numbered paragraphs.  Fed.

21  R. Civ. P. 10(b).  Plaintiff may join multiple claims if they are all against a single defendant.  Fed.

22  R. Civ. P. 18(a).  If plaintiff has more than one claim based upon separate transactions or

23  occurrences, the claims must be set forth in separate paragraphs.  Fed. R. Civ. P. 10(b).  The

24  federal rules contemplate brevity.  Fed. R. Civ. P. 8(a); Galbraith v. County of Santa Clara, 307

25  F.3d 1119, 1125 (9th Cir. 2002).  Plaintiff's claims must be set forth in short and plain terms,

26  simply, concisely and directly.  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) ("Rule

27  8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on

28  the merits of a claim.").

An amended complaint must be complete in itself without reference to any prior pleading. Local Rule 15-220; see Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files a First Amended Complaint, his original complaint is superseded.  By signing an amended complaint, plaintiff certifies he has evidentiary support for his allegations and that his claims are warranted by existing law.  Fed. R. Civ. P. 11.

## IX.     CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1.  Plaintiff's request for leave to proceed in forma pauperis, ECF No. 3, is granted.

2.  Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action.  Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1).  All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

3.  Plaintiff's motion for summary judgment, ECF No. 7, is denied without prejudice as prematurely filed.

4.  Defendants Fox and Martinez are dismissed from this action without prejudice.

5.  Plaintiff's Eighth and Fourteenth Amendment claims are dismissed from this action without prejudice.

6.  Plaintiff's original complaint, ECF No. 1, is dismissed with leave to file a First Amended Complaint within thirty (30) days after service of this order, based on plaintiff's Fourth Amendment challenges to the tests underlying RVRs ## 2 through 9.

7.  Plaintiff's failure to timely file a First Amended Complaint will result in the dismissal of this action without prejudice.

8.  The Clerk of Court is directed to send plaintiff, together with a copy of this order, a copy of the form complaint used by prisoners in this district to pursue a civil rights action under 42 U.S.C. § 1983.

In addition, **IT IS HEREBY RECOMMENDED** that plaintiff's requests for immediate court intervention, ECF Nos. 4 and 9, be denied.

32

1     These findings and recommendations regarding plaintiff's requests for immediate court

2  intervention are submitted to the United States District Judge assigned to this case, pursuant to the

3  provisions of 28 U.S.C. § 636(b)(l).  Within twenty one days after being served with these

4  findings and recommendations, any party may file written objections with the court and serve a

5  copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's

6  Findings and Recommendations."  The parties are advised that failure to file objections within the

7  specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951

8  F.2d 1153 (9th Cir. 1991).

9  DATED: November 4, 2016

10

11

12  ALLISON CLAIRE
    UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28