UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD E. TINSLEY,<br><br>              Plaintiff,<br><br>     v.<br><br>ROBERT FOX, et al.,<br><br>              Defendants. | No.  2:16-cv-1647 TLN AC P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983.  Currently before the court is defendants' motion to partially dismiss the first amended complaint on the ground that some of the claims were not exhausted until after the original complaint was filed.  ECF No. 40.  Plaintiff opposes the motion.  ECF No. 41.

I.      Plaintiff's Allegations

The first amended complaint alleges violations of plaintiff's Fourth and Fourteenth Amendment rights by defendants Tileston and Hoppe as the result of orders to submit to urinalysis drug testing and the resulting series of rules violation reports (RVRs).  ECF No. 22 at 2-12.  The RVRs were issued based on positive test results and subsequent refusals to cooperate with testing.  Id.

////

////

1

II.     Factual and Procedural History

   A. Original Complaint

Plaintiff filed the original complaint on July 13, 2016.[1] ECF No. 1 at 20. The complaint alleged that defendants Fox, Tileston, and Martinez had violated plaintiff's rights under the Fourth, Eighth, and Fourteenth Amendments in connection with urinalysis drug testing and the resulting RVRs. Id. at 2-3. Specifically, plaintiff alleged that on February 8, 2016, he was ordered to submit to urinalysis testing and was issued RVR 1 when the results came back positive for morphine. Id. at 8. Plaintiff was found guilty of the violation on March 11, 2016, and as a result was placed in the Mandatory Random Drug Testing (MRDT) program, which required him to submit to weekly testing. Id. at 8-9. He appealed the decision on March 13, 2016, and cited the fact that the urinalysis report showed the sample was diluted and argued that his sample had been tampered with. Id. at 9.

While the appeal of RVR 1 was pending, plaintiff was subject to three more tests that resulted in RVRs 2 through 4. Id. at 7, 10. On April 19, 2016, plaintiff was found guilty of RVR 2. Id. at 10-11. On April 27, 2016, the appeal of RVR 1 was partially granted at the second level on the ground that it appeared possible that there had been tampering, and RVR 1 was dismissed. Id. at 9-10, 35-37. A subsequent memorandum was issued on May 4, 2016, ordering that plaintiff be removed from weekly testing based on RVR 1, though he was still to be subject to random drug testing as required by department policy and any other weekly testing ordered as a result of other RVRs. Id. at 38. In accordance with the dismissal of RVR 1, the charges in RVRs 3 and 4 were dismissed on May 8 and 30, 2016, respectively, because the samples were diluted. Id. at 12.

On May 11, 2016, plaintiff was ordered to submit to urinalysis testing and received RVR 5 for refusing to provide a sample. Id. at 12. Plaintiff was again ordered to test on May 17 and 24, 2016; June 10, 13, 22, and 28, 2016; and July 5 and 12, 2016, and received RVRs 6 through

---

[1] Since plaintiff is a prisoner proceeding pro se, he is afforded the benefit of the prison mailbox rule. Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing rule that a prisoner's court document is deemed filed on the date the prisoner delivered the document to prison officials for mailing). Accordingly, all dates for plaintiff's filings reflect the application of this rule unless otherwise noted.

13 when he refused. Id. at 12-14. Plaintiff alleges that he should not have been put on the weekly testing list in the first place and that the weekly testing continued even after he was supposed to have been removed from the list. Id. at 10, 12, 15-16.

        B.  Screening of the Original Complaint

By order filed November 7, 2016, the undersigned screened the complaint. ECF No. 13. In screening the complaint, the undersigned conducted a comprehensive review of both the complaint and plaintiff's subsequent filings, resulting in a detailed summary of plaintiff's allegations, including the status of his attempts at exhausting his administrative remedies. Id. at 6-12. Relevant to the appeals of RVRs 2 through 9, the undersigned found that plaintiff had alleged as follows:

> Plaintiff appealed the guilty finding on RVR # 2 (Appeal Log No. CMF-M-16-01262). See id. at 77-82. First Level Review was bypassed. The Second Level Review decision, issued June 21, 2016, on behalf of defendant Warden Fox, upheld the guilty finding. Id. Plaintiff appears to indicate that this appeal was submitted for Third Level Review on July 13, 2016 (the date plaintiff filed his complaint in this action).[n.6] See id. at 7.
>
> [n.6] However, an August 12, 2016 letter indicates that on that date this appeal was submitted for an "amended Second Level Response." ECF No. 7 at 27.
>
> RVRs #3 and #4 were dismissed based on "not guilty" findings at the disciplinary hearings. ECF No. 1 at 7, 45, 52. RVR #3 was dismissed at a hearing held May 14, 2016, by Hearing Officer Lt. Cherinka, "based on a preponderance of evidence," particularly the dismissal of RVR #1 based on similar test results. Id. at 45-6; see also id. at 44-8. Similarly, RVR #4 was dismissed at a hearing held May 30, 2016, by Hearing Officer Lt. Hume, "based on a preponderance of evidence," due to lab results similar to those found in the test underlying RVR #1. Id. at 51; see also id. at 49-53, 82.
>
> When plaintiff filed his complaint on July 13, 2016, he had declined to cooperate with further urinalysis drug tests on 9 separate occasions, each resulting in a new RVR, commencing with RVR #5. See ECF No. 1 at 7. As of July 24, 2016, plaintiff had received a total of 16 RVRs for refusing to cooperate with testing.[n.7] See ECF No. 4. As of October 12, 2016, plaintiff had at least 24 RVRs based on his refusal to provide urine samples. See ECF No. 11.
>
> [n.7] On August 2, 2016, two of plaintiff's appeals were partially granted at Second Level Review, each dismissing the associated RVR and concluding that plaintiff should no longer be required to have four urinalyses per month based on the dismissal of his RVR #3. See ECF No. 7 at 8, 26. Appeal Log No. CMF-M-16-01603

> directed the dismissal of RVR # 5 (RVR Log No. 024394). See ECF No. 7 at 7-17. Appeal Log No. CMF-M-16-01726 directed the dismissal of RVR # 6 (RVR Log No. 028052). See ECF No. 7 at 18-26.
>
> Significantly, on August 12, 2016, plaintiff's RVRs ## 2 through 9, issued between April 4, 2016 and June 27, 2016 (RVR Log Nos. 013484, 014149, 022397, 025394, 028052, 030322, 113825, and 152632) were all dismissed on Second Level Review in Appeal Log No. CMF-M-16-01357. See ECF No. 8 at 13-5. The decision, issued on behalf of defendant Warden Fox, was based on the finding that plaintiff had improperly remained on the MRDT list after the dismissal of his RVR #1. Id.
>
> The August 12, 2016 appeal decision also noted that, on June 6, 2016, plaintiff was properly placed on the Mandatory Random Urinalysis Program (MRUP) list, "an inclusive process of selection of inmates where a small percentage of inmates are randomly selected at predetermined regular intervals . . . free from the mandates contained in [plaintiff's initial] partially granted appeal." Id. at 14. Therefore, plaintiff's RVRs ## 10 through 15, issued due to plaintiff's refusal to participate in testing after June 6, 2016, were each upheld; the first of these, RVR #10, was issued on June 28, 2016. See id. (Appeal Log No. CMF-M-16-01357 sustained the guilt findings on RVR Log Nos. 383924, 380832, 440732, 523244, 574226, and 646926). The decision also found that plaintiff's refusal to provide a urine sample on June 6, 2016 was properly "assessed third offense penalties" based on three of plaintiff's previous findings of guilt for possessing a controlled substance, in 2012 and 2013, when plaintiff was incarcerated at CMC. See id. The Second Level Decision ruled that "all RVRs received by the appellant after June 27, 2016, shall be adjudicated, and processed in accordance with departmental policies." Id.

ECF No. 13 at 8-10 (some footnotes omitted) (alterations in original). As a result, the undersigned found that while plaintiff had a basis for a Fourth Amendment claim based on RVRs 2 through 9, he did not exhaust his administrative remedies related to RVRs 2 through 9 until August 12, 2016, after the original complaint was filed. Id. at 11-12, 14-15. Plaintiff was advised that

> the nonrandom testing and attempted testing of plaintiff, resulting in RVRs ##2 through 9, supports a claim that the searches and attempted searches were unreasonable both as to scope (weekly testing under the MRDT program, later found inappropriate) and justification (initial qualified positive test result leading to RVR #1, later found unreliable). However, because plaintiff exhausted his challenges to RVRs ##2 through 9 after he filed the instant complaint, he may pursue a Fourth Amendment claim based on matters associated with these RVRs only in a First Amended Complaint.

Id. at 15 (emphasis omitted).  With respect to the defendants, the undersigned found that plaintiff was unable to state cognizable claims against Martinez and Fox, but that he could potentially state cognizable claims against Tileston and Hoppe.[2]  Id. at 22-24.  Defendants Fox and Martinez and plaintiff's Eighth and Fourteenth Amendment claims were dismissed without prejudice, and plaintiff was given leave to file a first amended complaint "based on [his] Fourth Amendment challenges to the tests underlying RVRs ## 2 through 9."  Id. at 32.

Plaintiff filed objections to both the substance and accuracy of the screening.  ECF No. 17.  In addressing plaintiff's objections, the district judge ordered that plaintiff could identify and clarify any facts he deemed essential to his claims in a first amended complaint and directed him to file a first amended complaint.  ECF No. 20.

### C. First Amended Complaint

The first amended complaint was filed on January 24, 2017.  ECF No. 22.  It alleged that Tileston and Hoppe had violated plaintiff's rights under the Fourth and Fourteenth Amendment based on over forty RVRs related to urinalysis testing.  Id.  In making his allegations, plaintiff stated that because he was not allowed to incorporate by reference the original complaint, he was instead incorporating the factual summary from the order screening the original complaint.  Id. at 3, 8.  Plaintiff then proceeded to once again allege that RVR 1 was dismissed and that he was erroneously left on the weekly testing list.  Id.  He asserted that as a result, "RVRs 2-9 were unreasonable searches" and that "RVRs 10-40 and beyond, being one unbroken chain of events, are all unreasonable searches."  Id. at 6.  He further alleged that because the requests to submit to testing were based on his improper inclusion on the weekly testing list, any evidence to support the resulting RVRs were based on tainted evidence, thereby violating his right to due process.  Id. at 6-7, 9.

### D. Screening of the First Amended Complaint

The undersigned screened the first amended complaint and found that plaintiff had successfully stated Fourth and Fourteenth Amendment claims against Tileston and Hoppe.  ECF

---

[2] Hoppe was not named as a defendant in the original complaint.

1  No. 28. In screening the first amended complaint, the undersigned found that the amended
2  complaint was accompanied by "additional evidence demonstrating that his appeals challenging
3  RVRs ##2 through 9 were administratively exhausted on August 12, 2016," and that plaintiff
4  could therefore proceed on his claims based on RVRs 2 through 9 because they had been
5  administratively exhausted prior to filing the amended complaint. Id. at 7 (citing ECF No. 22 at
6  15-25; ECF No. 13 at 9). However, the undersigned was unable to determine at the screening
7  stage whether plaintiff had exhausted his remedies as to RVR 10 or any subsequent RVRs
8  because with respect to those RVRs plaintiff appeared to have "a colorable basis for exhaustion to
9  be excused on grounds that the administrative process was 'incapable of use.'" Id. at 8-9.

     III.     Defendants' Motion to Dismiss

Defendants move to partially dismiss the first amended complaint on the grounds that plaintiff's Fourth and Fourteenth Amendment claims based on RVRs 2 through 9 were not exhausted prior to the initiation of this action. ECF No. 40. They argue that, as this court previously found, it is clear from the face of both the original and amended complaints, as well as the documents incorporated by reference, that the claims premised on RVRs 2 through 9 were not exhausted prior to the filing of the original complaint. Id. at 7. Defendants further assert that because the claims were raised in the initial complaint, they do not qualify as "new" under either Cano v. Taylor, 739 F.3d 1214 (9th Cir. 2014), or Rhodes v. Robinson, 621 F.3d 1002 (9th Cir. 2010), and any exhaustion that may have occurred between the filing of the initial and first amended complaints is therefore irrelevant. Id. at 7-8.

Plaintiff opposes the motion and states that he "stands firm on all his arguments, facts stated, and documents and exhibits filed in this matter, with particular emphasis on his opposition to U.S. Magistrate Judge Findings and Recommendations and the amended complaint, and exhibits before it." ECF No. 41 at 1. It appears that plaintiff intends to stand on the allegations of the amended complaint and incorporate by reference the arguments made in his objections to the November 7, 2016 Order and Findings and Recommendations.

     IV.     Legal Standards for Dismissal Under Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), a complaint will be dismissed for failure to state a claim if it makes

only "a formulaic recitation of the elements of a cause of action" rather than factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted). "Dismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint." ASARCO, LLC v. Union Pac. R.R. Co., 765 F.3d 999, 1004 (9th Cir. 2014) (citations omitted).

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, Hosp. Bldg. Co. v. Trs. of the Rex Hosp., 425 U.S. 738, 740 (1976) (citation omitted), and construe the pleading in the light most favorable to the party opposing the motion and resolve all doubts in the pleader's favor, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969) (citations omitted). The court will "presume that general allegations embrace those specific facts that are necessary to support the claim." Nat'l Org. for Women, Inc. v. Scheidler, 510 U.S. 249, 256 (1994) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992)). However, while pro se pleadings are held "to less stringent standards than formal pleadings drafted by lawyers," Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam) (citations omitted), the court need not accept legal conclusions "cast in the form of factual allegations," W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981) (citations omitted).

V.   Legal Standards for Exhaustion

   A. Prison Litigation Reform Act

Because plaintiff is a prisoner suing over the conditions of his confinement, his claims are subject to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 520 (2002) ("§ 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences"). "[T]hat language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." Ross v. Blake, 136 S. Ct. 1850, 1856 (2016)

1  (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006)).  However, "inmates are not required to
2  specially plead or demonstrate exhaustion in their complaints."  Jones v. Bock, 549 U.S. 199, 216
3  (2007).  Instead, "the defendant in a PLRA case must plead and prove nonexhaustion as an
4  affirmative defense," and it is the defendant's burden "to prove that there was an available
5  administrative remedy, and that the prisoner did not exhaust that available remedy."  Albino v.
6  Baca, 747 F.3d 1162, 1171-72 (9th Cir. 2014) (en banc) (citations omitted).  "In the rare event
7  that a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal
8  under Rule 12(b)(6)."  Id. at 1166

9       A prisoner must exhaust his available administrative remedies for constitutional claims
10  *prior* to asserting them in a civil rights complaint.  42 U.S.C. § 1997e(a); McKinney v. Carey,
11  311 F.3d 1198, 1199 (9th Cir. 2002) (per curiam).  A complaint may be amended to add new
12  claims so long as the administrative remedies for the new claims are exhausted prior to
13  amendment.  Cano v. Taylor, 739 F.3d 1214, 1220 (9th Cir. 2014) ("[C]laims that arose as a
14  cause of action prior to the filing of the initial complaint may be added to a complaint via an
15  amendment, as long as they are administratively exhausted prior to the amendment."); Rhodes v.
16  Robinson, 621 F.3d 1002, 1007 (9th Cir. 2010) ("The PLRA's exhaustion requirement is satisfied
17  so long as [plaintiff] exhausted his administrative remedies with respect to the new claims
18  asserted in his [amended complaint] before he tendered that complaint to the court for filing.").
19  However, if a prisoner exhausts a claim after bringing it before the court, his subsequent
20  exhaustion cannot excuse his earlier failure to exhaust.  Vaden v. Summerhill, 449 F.3d 1047,
21  1051 (9th Cir. 2006) ("[A prisoner] may initiate litigation in federal court only after the
22  administrative process ends and leaves his grievances unredressed.  It would be inconsistent with
23  the objectives of the statute to let him submit his complaint any earlier than that."); McKinney,
24  311 F.3d at 1199 ("a prisoner does not comply with [the exhaustion] requirement by exhausting
25  available remedies during the course of litigation").

26       When the district court concludes that the prisoner has not exhausted administrative
27  remedies on a claim, "the proper remedy is dismissal of the claim without prejudice."  Wyatt v.
28  Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003) (citation omitted), overruled on other grounds by

8

1  Albino, 747 F.3d at 1168-69.

    VI.    Discussion

In order to comply with the exhaustion requirement, plaintiff must have exhausted his administrative remedies prior to bringing his claims to court. 42 U.S.C. § 1997e(a); McKinney, 311 F.3d at 1199. A complaint has been brought when the inmate submits it to the court. Vanden, 449 F.3d at 1050. Although new claims added to a lawsuit via amendment that are exhausted prior to the amendment comply with the exhaustion requirement, Cano, 739 F.3d at 1220, defendants are correct that the claims in plaintiff's amended complaint regarding RVRs 2 through 9 are the same claims he made in his original complaint, compare ECF No. 1 with ECF No. 22. This means that plaintiff's administrative remedies must have been exhausted at the time he submitted the original complaint on July 13, 2016, because that is when he first brought them before the court.

As the undersigned previously found, it is clear from both the original and amended complaints that plaintiff was still in the process of exhausting his administrative remedies as they related to RVRs 2 through 9 at the time he filed the original complaint. Neither plaintiff's opposition to the motion to dismiss, ECF No. 41, nor his objections to the screening of the original complaint, ECF Nos. 17, 21, which he incorporated by reference, dispute this finding.[3] Assuming, as the court did upon screening, that plaintiff's administrative remedies were exhausted on August 12, 2016, at the second level of review,[4] exhaustion did not occur until

---

[3] Plaintiff's objections focused on the difference between the MRDT and MRUP lists; his assertion that he was never taken out of the MRDT program, despite the order that he be removed; the questionable nature of the lab reports; and the finding that he did not have a viable due process claim. ECF Nos. 17, 21.

[4] In screening the original complaint, the undersigned found that "[b]ecause Second Level Review resulted in the relief plaintiff sought on these RVRs, no further review was necessary in order to exhaust. Accordingly, the court finds, for purposes of screening, that as of August 12, 2016, plaintiff exhausted his administrative remedies concerning RVRs ## 2 through 9." ECF No. 13 at 11. Since the issue before the court is whether plaintiff exhausted his administrative remedies prior to filing the original complaint, it is unnecessary for the court to definitively determine whether the dismissal of the RVRs at the second level exhausted plaintiff's administrative remedies in light of his additional requested relief that he be removed from all testing programs and that the weekly tests be halted, see ECF No. 8 at 13-14, neither of which occurred.

approximately one month after the complaint had been submitted and the claims brought before the court. Plaintiff's subsequent exhaustion cannot excuse an earlier failure to exhaust administrative remedies prior to submitting his claims to the court, see Vaden, 449 F.3d at 1051 (finding plaintiff did not exhaust administrative remedies prior to bringing complaint where complaint was sent to the court before administrative review process concluded but was formally filed after review concluded); McKinney, 311 F.3d at 1199 (a prisoner does not comply with exhaustion requirement by exhausting available remedies during the course of litigation), and this court's previous indication to the contrary was in error.

It is clear from the face of both the original and first amended complaints that any exhaustion of remedies related to RVRs 2 through 9 happened after plaintiff submitted his original complaint and does not satisfy the exhaustion requirement.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion to partially dismiss the first amended complaint, ECF No. 40, be GRANTED.

2. Plaintiff's claims premised on RVRs 2 through 9 be dismissed without prejudice for failure to exhaust.

3. This action proceed on plaintiff's claims premised on RVRs 10 and beyond.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **fourteen days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within **fourteen days** after service of the objections. **Due to exigencies in the court's calendar, no extensions of time will be granted.**[5] The parties are

////

---

[5] Plaintiff is informed that in order to obtain the district judge's independent review and preserve issues for appeal, he need only identify the findings and recommendations to which he objects. There is no need to reproduce his arguments on the issues.

advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 31, 2021

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE